535 So.2d 1294 (1988)
David W. MULKEY
v.
James TUBB, M.D., Fortune Dugan, M.D., and East Jefferson General Hospital.
No. 88-CA-496.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Cummings, Cummings & Dudenhefer, Donna S. Cummings, New Orleans, for David W. Mulkey, plaintiff-appellant.
Stassi, Rausch & Giordano, James E. Hritz, New Orleans, for East Jefferson Gen. Hosp., defendant-appellee.
Before CHEHARDY, C.J., and KLIEBERT and WICKER, JJ.
CHEHARDY, Chief Judge.
Plaintiff appeals the dismissal of his medical malpractice action against the hospital in which he underwent heart valve replacement surgery and amputation of a leg. We affirm, for the reasons that follow.
David W. Mulkey, aged 74, was hospitalized in May 1981 due to subacute bacterial endocarditis (an infection of the heart), as a consequence of which he underwent emergency surgery in June 1981 for replacement of a coronary mitral valve and a single coronary artery bypass. Approximately two days after surgery a lesion was discovered on his left leg. The lesion developed into necrotic (dead) tissue, eventually *1295 resulting in gangrene and requiring amputation of the leg to prevent the infection from damaging the new heart valve.
Mulkey sued Dr. James Tubb (who performed the cardiac surgery), Dr. Fortune Dugan (the cardiologist who referred him to Dr. Tubb) and East Jefferson General Hospital (which properly should have been designated as Jefferson Parish Hospital Service District No. 2).
The physicians were dismissed prior to trial, so the non-jury trial proceeded against the hospital only. After taking the case under advisement, the court ruled in favor of the defendant, dismissing plaintiff's suit. In well-written reasons for judgment, the trial judge concluded the plaintiff had failed to carry his burden of proving negligence on the part of the hospital employees or that the hospital personnel had violated any standards of care in treatment of the plaintiff. We attach hereto as Appendix the reasons for judgment, which set forth the facts clearly.
On appeal, plaintiff contends the trial judge erred in failing to find the doctrine of res ipsa loquitur applicable to create a presumption of negligence on the part of the hospital. Plaintiff argues that the presumption created if the doctrine were applied was not rebutted by the defendant.
Plaintiff contends the lesion on his leg that ultimately resulted in amputation was produced by burns from a "Bovie pad," a grounding device placed on a patient for a surgery in which a Bovie generator (an electrocauterization machine) is to be used. He contends the lesion was a Bovie pad burn that resulted from the use of a defibrillator on him immediately after surgery was completed, while the Bovie pads were still on him. (A defibrillator is a machine that applies electrical current to arrest the very rapid irregular noncoordinated heart contractions known as fibrillations). Plaintiff takes the position that the surgical nurses, who were hospital employees, must have been negligent in failing to remove a Bovie pad from the calf of plaintiff's left leg prior to defibrillation.
The hospital, on the other hand, contends that the lesion resulted from the pre-existing peripheral vascular disease in his leg, which prior to surgery had decreased blood circulation in the leg so much as to make the pulse nondetectable, combined with pressure necrosis resulting from the leg remaining wrapped in an Ace bandage for 48 hours following the surgery. The hospital asserts the lesion could not have been caused by a Bovie pad andeven if it were there was no negligence by any hospital employee.
The rules of res ipsa loquitur apply in any negligence action where the circumstances suggest the defendant's negligence as the most plausible explanation for the injury. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). The principle of res ipsa loquitur is a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be more the probable cause of injury in the absence of other as-plausible explanations by witnesses found credible. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
In order for res ipsa loquitur to be applicable the plaintiff must show (1) the accident is of a kind that normally does not occur in the absence of negligence, (2) the accident was caused by an instrumentality in the actual or constructive control of the defendant, and (3) the information as to the true cause of the accident was more readily available to the defendant than to the plaintiff. Culver v. Ochsner Foundation Hosp., 474 So.2d 984 (La.App. 5 Cir.1985), writ denied 477 So.2d 705.
Res ipsa loquitur is irrelevant where a body of direct evidence is available explaining the activity leading to the injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973). When it can be shown reasonably that the accident could have occurred as a result of one or two or more causes, the res ipsa loquitur rule cannot be invoked. Hancock v. Safeco Ins. Co., 368 So.2d 1162 (La.App. 3 Cir. 1979), writ denied 369 So.2d 1377.
*1296 It is clear from the record here that the trial judge was correct in refusing to apply the res ipsa doctrine. The evidence establishes that the lesion more probably than not was caused by the plaintiff's decreased blood circulation resulting from his pre-existing vascular disease, combined with the Ace bandage wrap remaining too long on his leg following surgery.
First, there was no evidence there was ever a Bovie pad on the plaintiff's leg. The hospital record and the testimony indicate that only one Bovie pad was used and it was placed under the patient's right buttock.
Further, several of the hospital's experts testified that the lesion could not have been a Bovie burn because it was not in the location of the Bovie pad used during the surgery, it did not appear immediately after the surgery, it covered too large an area of skin, and it did not have the appearance of a Bovie burn. Two experts in mechanisms for electrical surgery stated categorically that it was impossible for this type of lesion in this location to have resulted from use of a defibrillator or Bovie generator.
Even Dr. Tubb, the surgeon, who first opined the lesion resulted from a Bovie pad, testified there was no negligence on the part of hospital personnel in leaving Bovie pads on during defibrillation. Despite his opinion that the lesion was a Bovie burn Dr. Tubb was unable to establish there was a Bovie pad used on plaintiff's leg. Other witnesses' testimony indicated it would be unheard of to place a Bovie pad on the leg for this type of surgery, as the legs are made sterile prior to surgery so that the surgeon may harvest an artery to use for the coronary bypass. Placement of a Bovie pad on the leg would contaminate the sterile field of surgery.
Given the prerequisites for application of res ipsa loquitur it is plain that doctrine cannot be applied here, for the explanation proffered by the hospital for the lesion on plaintiff's leg not only was more plausible but also was far more likely under the weight of the evidence. The trial judge correctly ruled that plaintiff had failed to carry his burden of proof.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.

APPENDIX

REASONS FOR JUDGMENT
David Mulkey underwent emergency heart surgery on June 18, 1981 at East Jefferson hospital. The heart surgery was successful. However, three months after surgery Mulkey's leg had to be amputated above the knee. Mulkey filed suit against Dr. Fortune Dugan (cardiologist), Dr. James Tubb (cardiovascular surgeon) and the hospital. Dr. Dugan was dismissed on motion for summary judgment prior to trial. On plaintiff's motion, Dr. Tubb was dismissed as a party defendant shortly before trial. Plaintiff went to trial against the hospital only. Finding no negligence on the part of the hospital nurses, this lawsuit will be dismissed at plaintiff's cost.

SUMMARY OF THE FACTS:
Mr. David W. Mulkey, a (74) seventy-four-year-old male, was admitted to East Jefferson General Hospital on May 14, 1981, as an emergency transfer patient from Seventh Ward General Hospital in Hammond, Louisiana. The patient's admitting diagnosis was "stroke" and the patient was complaining of left-lower extremity pain and was noted on his initial physical examination to be without left popliteal and bilateral dorsalis pedis and posterior tibial pulses. It was the impression of Dr. Dugan, the admitting cardiologist, that the patient was suffering from peripheral vascular disease.
The patient continued to complain of left calf pain, and later, on June 12, an echocardiogram revealed aortic insufficiency and on June 18, the patient was taken for cardiac catheterization. The results indicated that the patient was suffering from bacterial endocarditis, from severe aortic regurgitation secondary to the endocarditis with a *1297 question of prior aortic valve disease, and finally, that he was suffering from significant two vessal coronary artery disease. Surgery was recommended.
Dr. Tubb, a cardiovascular surgeon, was consulted and emergency surgery was performed resulting in an aortic valve replacement with a single coronary artery bypass. The greater saphenous vein of the left leg in the upper thigh area was harvested for grafting. During surgery, the patient experienced ventricular fibrillation, but survived the surgery and was seen thereafter in the intensive care unit. Due to persistent sternal and pericardal bleeding, a second emergency surgery was required at 4:00 a.m. the following morning. Thereafter, the patient was again returned to the intensive care unit.
On the evening following the first surgery, nurses notes reveal that the patient's left-lower extremity was cooler and mottled when compared to the right. Following the second surgery, it was noted that the pulses in the lower extremities were absent and that the left foot continued to be cold, and toes cyanotic. Later, the foot remained cool, turned bluish and remained pulseless. At 8:00 p.m. on the evening of June 21, 2½ days following the original open-heart surgery, the ace wrapped bandages were removed from the patient's legs. Four hours after the bandages were removed, a purplish color band approximately 1½ to 2½ inches in width was first noted by the nurses, circling the upper left calf. Approximately fourteen hours later, the band was noted to be somewhat more bluish.
The patient's left lower extremity began to deteriorate and on July 15, one month following the patient's open-heart surgery, Dr. John Church, a plastic surgeon, was consulted to examine the patient's leg. He noted full thickness skin necrosis and recommended excision and skin grafting. On July 27, and on several occasions thereafter, the patient underwent surgical debridement. On August 13, the left leg was still cold and mottled and amputation of several toes became necessary. On September 23, an above the knee amputation was completed noting a large amount of atherosclerotic lot in the artery at that level. The patient's wound slowly healed. The patient was thereafter transferred to F. Edward Hebert Hospital for placement of a prosthesis and later was returned home.

CONTENTIONS OF PARTIES AND CONCLUSION
During surgery, Mulkey experienced ventricular fibrillation. Mulkey's theory is that during this defibrillation he was burned on his left calf because a grounding pad was left under his left calf.
The hospital contends Mulkey's lesion on his left calf was the result of pressure necrosis; that the use of ace bandages on his legs (which had poor circulation) caused this condition. The hospital says this was not an electrical-surgical burn.
In support of his theory, Mulkey called as a witness his treating physician Dr. Tubb. Tubb concluded shortly after the operation that Mulkey's injury to his left calf was an electrical burn from the "bovey" pad (grounding pad). Tubb says because of the nature of the injury and the size of the injury he believes that Mulkey sustained an electrical burn from this grounding pad during defibrillation.
The hospital records indicate that the grounding pad was placed on Mulkey's buttock and that only one grounding pad was in use. However, Dr. Tubb says that another bovey pad was probably placed on Mulkey's calf and this was simply not reported on the hospital records.
The hospital's theory is that this man's leg was in jeopardy because of poor circulation; that ace bandages should not have been used on this patient because of his poor blood flow in the legs; that the pressure from these ace bandages caused the lesion in his calf; that the ace wraps should not have been left 48 hours after the operation. All of these factors, the hospital contends, would result in decreasing blood flow at a critical time to a man who had impaired circulation in the legs.
*1298 After considering all the evidence, this Court concludes that only one grounding pad was in use and that it was properly placed on Mulkey's buttock. The Court agrees with the hospital that this was not an electrical-surgical burn. However, even if there was a second bovey pad on Mulkey's calf, the nurses were not negligent in failing to remove the pads prior to defibrillation. In short, no expert has testified that the nurses were negligent in anyway. Dr. Tubb was in charge of this operation. He decided to apply the ace wraps. He decided when to remove the ace wraps. And it would be his decision when and if to remove these grounding pads.
There is no showing that the hospital personnel violated any standards of care in the treatment of Mr. Mulkey. Accordingly this lawsuit will be dismissed at plaintiff's cost.
Gretna, Louisiana this 28 day of March, 1988.
 /s/ Robert J. Burns
 ROBERT J. BURNS, JUDGE