570 So.2d 216 (1990)
Elouise EUGENE, on Behalf of Her Minor Child, Bruce EUGENE
v.
WAL-MART STORES, INC. and XYZ Insurance Company.
No. 90-CA-377.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Frederick R. Campbell, Roy C. Beard, McGlinchey, Stafford, Cellini & Lang, New Orleans, for defendant/appellant.
Jesse Clarence Brown, New Orleans, for plaintiff/appellee.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from an action for damages filed on behalf of plaintiff/appellee, Elouise Eugene, on behalf of her minor child, Bruce Eugene, against defendant/appellant, Wal-Mart Stores, Inc. The trial judge awarded $195.00 for medical expenses and $300.00 for pain and suffering, judicial interest and costs to Eugene. Both parties have appealed. We reverse.
Eugene filed a petition for damages alleging he cut his hand on a steel rack while shopping at Wal-Mart on July 12, 1988. Trial in this matter took place December 28, 1989. Eugene alleges Wal-Mart was negligent in:
A. Creating a hazardous situation and allowing same to exist;
B. Failing to warn customers of a hazardous situation within the store; and
C. Failing to maintain reasonably safe premises.
In his petition he seeks damages for medical expenses, mental anguish/inconvenience, and pain and suffering but he did not seek damages for lost wages.
Wal-Mart urged the defense of comparative negligence. It also alleged the incident was "caused or contributed to by others *217 for whom [Wal-Mart] has no responsibility."
Wal-Mart now appeals the adverse judgment specifying the following error:
The trial court committed manifest error in ruling in favor of the plaintiff, when no evidence was presented to suggest that a hazardous condition existed at the Wal-Mart store on the date of the alleged accident which either caused or contributed to the injury sustained by Bruce Eugene.
Eugene has answered the appeal and asserts the following error:
The trial court committed manifest error substantial enough to grant another trial on the issue of damages alone when it did not admit evidence of the additional treatment by a second physician when the injury to the plaintiff became infected after initial injury and treatment and when it failed to consider the plaintiff's additional pain and suffering and inconvenience from the infection and the plaintiffs lost wages.

TIMELINESS OF ANSWER:
Appellant argues Eugene's answer to the appeal is untimely.
On March 26, 1990 Elouise Eugene on behalf of her minor son, Bruce Eugene, filed a "petition for devolutive appeal" from the judgment. The appeal was lodged in this court on May 29, 1990. La.C. Civ.P. art. 2133 allows an answer to the appeal to be filed "not later than fifteen days after the return day or the lodging of the record whichever is later." Eugene seeks an increase in the damage award. Eugene has answered the appeal well within the delay imposed by La.C.Civ.P. art. 2133.

CAUSATION:
Wal-Mart argues the trial judge failed to address the burden of proof outlined in La.R.S. 9:2800.6. On the other hand, Eugene contends La.R.S. 9:2800.6 is not applicable to this case since the cause of action arose on July 12, 1988 which was one week before the effective date of the statute, July 18, 1988. The case was tried December 28, 1989.
Section 2 of La.R.S. 9:2800.6 provides the act "shall apply to all cases tried on or after" the effective date.
Section 1 of the statute addresses the burden of proof regarding the "[l]iability of a merchant for injuries sustained by a person while on the premises of the merchant" as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
La.R.S. 9:2800.6(B) requires the plaintiff prove "the accident was caused by a hazardous condition" before the burden shifts to the defendant "to prove [h]e acted in a reasonably prudent manner in exercising the duty of care he owed to the person to *218 keep the premises tree of any hazardous conditions."
In the instant case, it is of no moment whether La.R.S. 9:2800.6 applies since La. R.S. 9:2800.6 parallels the existing jurisprudence of Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984) regarding plaintiff's burden of proof. We quote with approval the following footnote in Estes v. Kroger Co., 556 So.2d 240 (La.App. 2d Cir. 1990).
Under LSA-R.S. 9:2800.6, our new slip and fall statute, a plaintiff must prove the accident was caused by a hazardous condition on the premises. The burden then shifts to the merchant to prove he acted reasonably to keep the premises free of hazardous conditions. To that extent, the statute parallels existing jurisprudential principles. Hence, an analysis of the primary issue in the present case would yield the same result under either statement of the law. [Emphasis added].
Estes, supra at 243, n. 1.
Since plaintiff did not meet his burden of proof required under both La.R.S. 9:2800.1 and Brown, supra the burden never shifted to the store to exculpate itself. Brown, supra. Therefore, any differences between La.R.S. 9:2800.6 and the jurisprudence in the burden of proof required by the defendant store to exculpate itself are of no consequence to this case.
The testimony at trial set forth the following:
Nathaniel Jones testified Bruce Eugene was driving Eugene's mother's car on the date in question. Jones was a passenger. Jones thought he saw his (Jones') mother going into the Wal-Mart store. Both he and Bruce Eugene entered the store in order to locate her but were unsuccessful. He did not see Bruce Eugene cut his hand. He stated:
Well, me and Bruce was walk down the isle [sic] and I was walking ahead of him and then I said lets [sic] go and he turned around. And, that's when he cut his hand and he showed it to me.
In response to whether he saw what Bruce Eugene had cut his hand on, he replied, I think it was the rack. However, he stated he did not actually see him cut his hand on the rack.
Afterwards, Bruce Eugene went to the pharmacy and a man took him to the bathroom. Jones was present in the bathroom when the man poured something on the hand. He and Bruce Eugene subsequently left with Jones now driving the car. Jones remained at the home while Bruce Eugene's mother took him "to the Doctor."
Bruce Eugene testified:
We was walking down the aisles and he [Jones] was in front of me. I was walking behind himI would say to his inside, his left. I was walking up the aisle and after he saw he didn't see him Ma Ma he said, "Lets [sic] go." So I turned around and I cut my [left] hand and I showed him. It was bleeding ...
He described going to the pharmacy and then being assisted in the bathroom by the manager. The manager "washed it out with peroxide and this brown stuff, I think it's called Betadine or whatever, and he washed it out with that and he put two bandaids on it."
He went home and his mother took him to the hospital after first stopping at Wal-Mart. At the hospital he was given "three shots to deaden it." The hand was stitched with five stitches.
He was asked whether he saw what had cut his hand. He replied, "I didn't see it but they had a trail of blood leading from the rack. It was a battery rack." He explained he had been swinging his arms prior to the injury. The inside of his hand was cut.
Elouise Eugene testified she is Bruce Eugene's mother. She did not witness the accident of July 12, 1988 but first learned of the incident when her son came home and informed her.
He showed her a bloody hand with "white fat [h]anging out of" it. She dressed and brought him to "the emergency room at River Parish Hospital to get his hand stitched." On her way there she stopped at the Wal-Mart store in order to *219 determine whether Wal-Mart would pay the bill. She waited "about 45 minutes" before the manager met with her. The manager told her Wal-Mart would pay the bill; however, when the hospital telephoned Wal-Mart, the company refused to pay. She used her "Medicade Card" for payment. Her son's hand was stitched.
Later, on an unspecified date, she brought her son to Dr. Dwight McConnon for treatment of an infection in the hand. Dr. McConnon treated him with "anti-bodies" and heat on three to four occasions.
James D. Backer testified he was employed as manager for Wal-Mart on the date in question. He was paged to come to the lay-a-way counter. Bruce Eugene told him he cut his hand on a rack. He asked Bruce Eugene to show him the rack. Bruce Eugene showed him a battery rack. Bruce Eugene stated he did not know how he cut his hand. Backer testified:
the rack was in good condition and no sharp objects or anything [were] protruding from the rack.
Backer saw no blood on the floor near the rack.
He denied offering to pay the bill as Elouise Eugene had stated.
Nita Russ testified that on the date in question she was employed as a stocker. She was in the toy department when she turned and saw Bruce Eugene with blood on his hand. He walked by as if trying to leave and did not ask for assistance. When she offered assistance he told her "no". When asked what had happened, he replied, "Oh nothing. I think it's okay."
Nevertheless, she insisted on getting help for him. Afterwards, she wiped the blood off the floor. She followed the trail of blood and discovered it ended near a cassette and a dart. She didn't notice whether there was blood on these items.
Frank Leiche testified on that date he was employed as sporting goods department manager for Wal-Mart. He noticed the following in the area where Russ was cleaning the blood:
They had a cassette tape package and a dart, an open dart package and it looked like the cassette tape package was pried open with the dart.
There was no blood on the cassette package.
Bruce Eugene specifically denied he cut his hand while attempting to take a cassette tape out of a package with the aid of a dart.
The trial judge rendered judgment in favor of plaintiff. He reasoned:
Okay all the evidence that has been presented by the defense seems to stipulate that or seems to draw the conclusion that Mr. Bruce Eugene was in that store with the intention of taking something out of the store, okay. However, i have no evidence to show that Mr. Eugene ever had those things in his possession. Therefore, I can notwith the insufficient evidence i can't rule that. All I can rule is that Mr. Eugene [sic] hand was cut in the store. We have medical bills at River Parish totaling ONE HUNDRED AND NINTY-FIVE AND NO/100 DOLLARS ($195.00). Mr. Eugene said he was working and he missed a week and three days of work. I don't know anything about his wages therefore I can't give him any loss of wages. The only thing i can give Mr. Eugene is pain and suffering and, i don't have a bill from Doctor McKenner's [sic] and i don't have anything else. So, all I can do is have Wal Mart [sic] pay ONE HUNDRED AND NINTY-FIVE AND NO/100 DOLLARS ($195.00) to River Parish Hospital for the medicals and I am going to give Mr. Eugene THREE HUNDRED AND NO/100 DOLLARS ($300.00) for pain and suffering, thats [sic] it.
The trial judge made the factual finding that Bruce Eugene's "hand was cut in the store." That factual finding is amply supported by the record. However, the plaintiff must prove "the existence of a condition that presented an unreasonable risk of harm which resulted in [the] injury." Brown, supra at 687.
Although Bruce Eugene testified he thought he cut his hand on the "rack" he *220 also testified he did not see what had cut his hand; he only saw a "trail of blood leading from the rack ... a battery rack."
There was no testimony the rack presented a hazardous condition; however, there was uncontroverted testimony from Backer "the rack was in good condition" with "no sharp objects or anything protruding from the rack."
The trial court erred in granting plaintiff recovery since plaintiff did not offer any evidence of a hazardous condition causing the accident. There is absolutely no suggestion in the record the rack presented an unreasonable risk of harm which caused Eugene's injury. Brown, supra.
Appellee appears to argue in brief that the doctrine of res ipsa loquitur should apply.
In Mulkey v. Tubb, 535 So.2d 1294 (La. App. 5th Cir.1988) we explained at 1295:
The rules of res ipsa loquitur apply in any negligence action where the circumstances suggest the defendant's negligence as the most plausible explanation for the injury. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). The principle of res ipsa loquitur is a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be more the probable cause of injury in the absence of other asplausible explanations by witnesses found credible. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
In order for res ipsa loquitur to be applicable the plaintiff must show (1) the accident is of a kind that normally does not occur in the absence of negligence, (2) the accident was caused by an instrumentality in the actual or constructive control of the defendant, and (3) the information as to the true cause of the accident was more readily available to the defendant than to the plaintiff. Culver v. Ochsner Foundation Hosp., 474 So.2d 984 (La.App. 5 Cir.1985), writ denied 477 So.2d 705.
Res ipsa loquitur is irrelevant where a body of direct evidence is available explaining the activity leading to the injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973). When it can be shown reasonably that the accident could have occurred as a result of one or two or more Causes, the res ipsa loquitur rule cannot be invoked, [citation omitted].
Since there is uncontroverted testimony that the rack was not defective or hazardous, res ipsa loquitur cannot be imposed to infer that it was.
Even if we were to admit only for the sake of argument that the doctrine applies and that Bruce Eugene has submitted proof of the accident and the circumstances, therein, we would be compelled to find that Wal-Mart exculpated itself with regard to the existence of a hazardous condition when there was uncontradicted testimony the battery rack did not present a hazardous condition to cause a puncture of the inside of a hand sufficient to require five stitches.
"[T]he mere occurrence of an accident does not give rise to a presumption of negligence." [footnote omitted]. Herron v. Maryland Casualty Company, 347 F.2d 357, 358 (5th Cir.1965). Furthermore, in this case Bruce Eugene's mere belief the battery rack caused the injury "does not support a reasonable inference that the [rack cut the inside of his hand]." Id. at 358.
Therefore, we conclude the trial court's finding Wal-Mart maintained a hazardous condition is clearly wrong and manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Our independent review of the record reveals no evidence Wal-Mart was negligent. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975).
Eugene also contends in brief the judgment imposing liability on Wal-Mart should be affirmed on the basis of strict liability pursuant to La.C.C. art. 2317 and negligence pursuant to La.C.C. arts. 2315 and 2316.
*221 Even assuming plaintiffs action had been grounded in strict liability, such an action requires proof that the object in the care, control and custody of Wal-Mart "had a vice or defect which created an unreasonable risk of harm [a]nd [t]he injuries were caused by a defect." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La. 1990) at 1112.
The record lacks evidence there was a vice or defect in the battery rack.
Under articles 2315 and 2316 the plaintiff still has the burden of proving causation. Charpentier v. St. Martin Parish School Bd., 411 So.2d 717 (La.App. 3rd Cir.1982).
Accordingly, for the reasons stated the judgment in favor of plaintiff, Elouise Eugene on behalf of her minor son, Bruce Eugene, is reversed and judgment is now rendered in favor of defendant, Wal-Mart, rejecting the demands of plaintiff against defendant, Wal-Mart.
REVERSED AND RENDERED.