WICKER, Judge.
This appeal arises from a suit for damages filed on behalf of Willie Mae Taylor, plaintiff/appellant, against Schwegmann’s Giant Super Markets, Inc., defendant/ap-pellee, for injuries allegedly sustained from slipping in spilled liquid in that' store. The jury concluded a hazardous condition existed in the store but it did not find that condition to cause the damages alleged. The trial judge subsequently entered a judgment in favor of Schwegmann. Taylor now appeals the adverse judgment. We affirm.
On appeal from the adverse judgment Taylor specifies the following error:
It was error for the trial court to render a judgment contrary to the law and evidence.
Taylor’s counsel argues in brief that Taylor proved by “voluminous testimony” her injuries were caused by slipping on the foreign substance. Schwegmann’s counsel argues in brief the jury’s credibility determination should not be overturned in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La.1973). We agree with appellee’s position. See also Rosell v. ESCO, 549 So.2d 840 (La.1989).
The jury heard conflicting testimony regarding whether Taylor actually *642 stepped into the liquid. We find no manifest error in the jury conclusion Taylor did not step in the liquid since that conclusion is amply supported by the evidence.
Darryl Everrett Simmons, Assistant Chief of Security for Schwegmann’s, testified he was employed by Schwegmann’s on the date of the incident. It was he who made the accident report. He stated he saw Taylor sitting on the floor in aisle 12 when he arrived. She complained of “great pain” in the hip, left arm and right leg. He testified:
She said that she was walking, either going to or coming from her basket, and she slipped.
Simmons located a foreign substance on the floor approximately two feet from Taylor. The substance was a yellow liquid. However, there were no witnesses to the fall. It was his job to investigate accidents. Another department handled cleaning up. He stated the substance on the floor:
had not been stepped in or rolled in or any indication that it have [sic] been tampered, [emphasis added].
He checked Taylor’s shoes and noted “the shoes she was [sic] wearing had no indication of the substance being on it.” There was nothing else in the aisle on which Taylor could have tripped.
The jury also heard the testimony of Jamie Lynn Herzog through her deposition taken prior to trial. She was employed by Schwegmann’s as a porter on the day of the incident. Her job was to clean substances on the floor. The incident happened between 11:00 a.m. and 1:00 p.m. on aisle 12. Herzog arrived at work that day between 7:00 a.m. and 8:00 a.m. She cleaned aisle 12 before the store opened at 8:00 a.m. Between 8:00 a.m. and 11:00 a.m. that day no one would have inspected aisle 12. She recalled the following:
[I] was paged to that aisle after she was already up and into the wheel chair. I cleaned up. They pushed her up to the front of the store in the wheel chair[.]
When she went to the aisle, Simmons, who was with security, was there. The following colloquy occurred:
Q. All right. At the spill did you see whether there was a scuff mark through the spill or whether it was slid along the floor or did you see whether the spill had been disturbed at all?
A. I don’t think there was anything in it as far as I can remember. I don’t think there was anything in it.
Q. Do you recall seeing if there was anything like a footprint around it?
A. I don’t remember. I don’t think so.
Q. There was only that one spill of lotion or was there maybe some other lotion spilled somewhere else away?
A. Just that pile.
Q. Is that the only thing you cleaned up? That one spill?
A. Yes, sir.
On the other hand, Taylor testified as follows:
I parked my basket to the side. [I] walked over to get a large box of washing powder, but before I got to the washing powder, they had some yellow liquid stuff on the floor. It looked like liquid lotion. I slipped and fell before I even got my washing powder.
She didn’t see the substance before she fell because it was the same color as the floor. She was alone in the store as her husband was outside. Someone called Simmons. Simmons kneeled next to her and placed his hand in the substance. He said it was soap. The liquid “was right where [she] slipped.” No one came forward to state they witnessed the slip and fall. She was placed in a wheelchair and her husband was asked to come inside the store. Simmons took an accident report.
She was further questioned on cross-examination about the Schwegmann incident. The following colloquy occurred:
Q. [D]id you ever see any lotion on your shoes?
A. No, sir.
Q. Never saw it?
A. No, sir.
Q. You never saw any lotion until Mr. Simmons pointed it out on the floor a few feet away; did you?
*643 A. I sure didn’t.
Q. And you never saw where that lotion had been stepped in, rolled over or anything like that?
A. No, but it was on my stockings though. It was on my stocking when I slipped and fell. They had some of it on there.
Q. But you weren’t walking around in your stockings were you, on your knees or on your shins?
A. I didn’t look at the bottom of my shoes to see if any had any on it.
Q. Isn’t it true that Mr. Simmons is the one that pointed out the lotion on the floor to you?
A. He pointed out the lotion, he didn’t look under my shoes like he said he did.
Q. He didn’t?
A. He didn’t inspect my shoes.
* * * * * *
Q. Did you see anything else in the aisle, any other foreign substances, any liquids, anything at all that could have caused you to fall, other than the lotion that Mr. Simmons pointed out a few feet away?
A. I didn’t see anything at all. I wasn’t even walking looking at the floor.
Q. After you left, after you left Schwegmann’s did you find anything on your shoes?
A. I didn’t look at my shoes, [emphasis added].
Taylor relies on the testimony of Wilfred Gallardo, an expert in the field of occupational safety, to support causation. However, Gallardo admitted he was not a witness to the incident.
The jury evidently gave greater weight to Simmons’ testimony where he testified he inspected Taylor’s shoes and the floor. He saw no indication the liquid had been stepped in or rolled in. Although Taylor testified Simmons’ did not inspect her shoes the jury evidently made a credibility determination and chose to accept Simmons’ version. Additionally, Simmons’ job of investigating accidents was corroborated by Herzog. Herzog also testified she did not think there had been any disturbance of the spill.
We held in Eugene v. Wal-Mart Stores, Inc., 570 So.2d 216, 220 (La.App. 5th Cir.1990):
[T]he mere occurrence of an accident does not give rise to a presumption of negligence. Herron v. Maryland Casualty Company, 347 F.2d 357, 358 (5th Cir.1965). [quoting Herron at 358.]
Pursuant to La.R.S. 9:2800.6 plaintiff has the burden of proving “damages as the result of a hazardous condition while on the merchant’s premises [t]hat the aceident was caused by a hazardous condition.”
In the instant case the jury concluded a hazardous condition existed but that the condition did not cause the accident. We find no manifest error in that conclusion.
Accordingly, for the reasons stated, the judgment in favor of defendant, Schweg-mann’s Giant Supermarkets, Inc., dismissing Willie Mae Taylor’s (plaintiff’s) suit for damages, is affirmed.
AFFIRMED.