IzCANNELLA, Judge.
Appedant, Connie Fdasek, appeals from a judgment which dismisses her medical malpractice action against defendant, Doctor’s Hospital of Jefferson (Doctor’s Hospital). We affirm.
Appedant entered Doctor’s Hospital on February 1, 1989 to undergo surgery for endometriosis. Her physician was Dr. Jo *1264 seph Beilina. Surgery was uneventful and she was discharged on February 4,1989. On February 5,1989, she alleges that she discovered a blister above the incision on her abdomen and called Doctor’s Hospital for advice because it was Sunday and Dr. Beilina’s office was closed. Appellant claims that she spoke to a nurse who told her to treat the problem with an antibiotic ointment and warm compresses. Appellant contends that she continued to do this for some months and it eventually scabbed over. However, she was left with an approximately ten centimeter wide and three centimeter high unsightly sear, which is sensitive to cold and heat. Also, she experiences varying degrees of numbness in the scar area.
laAppellant filed a medical malpractice claim against Doctor’s Hospital on January 16, 1990, alleging that Doctor’s Hospital or its’ employees were negligent in causing a bum to occur dining or after surgery. On April 16, 1992, a medical malpractice panel was convened and, following presentation of evidence, concluded that Doctor’s Hospital did not breach the applicable standard of care.
Appellant filed suit against Doctor’s Hospital on July 14, 1992. A judge trial was held on June 19, 1995. Appellant and her husband testified, medical records were admitted and several doctors testified by deposition. On August 30, 1995, the trial judge rendered judgment in favor of Doctor’s Hospital and dismissed appellant’s suit. On December 19, 1995, the trial judge provided reasons for judgment after appellant’s request. In his reasons, the trial judge determined that appellant failed to prove that Doctor’s Hospital breached the applicable standard of care in the performance of medical procedures rendered to her.
On appeal, appellant first contends that the trial judge erred in finding that she failed to prove that Doctor’s Hospital breached the applicable standard of care in the performance of the medical procedures. Second, she asserts that the trial judge erred in failing to make a determination of whether the scar was a keloid or the result of a bum. Third, appellant contends that the trial judge erred in failing to apply the doctrine of res ipsa loquitur to find liability.
The Court of Appeal may not upset the factual findings of a trial court absent manifest error or unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La. 7/15/94), 639 So.2d 216, 220, 221; Goodliffe v. Parish Anesthesia Associates, 95-357 (La. App. 5 Cir. 10/18/95); 663 So.2d 769, 774 (La.App. 5 Cir.1995). Where two permissible views of the evidence exist, the factfin-der’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La. 1993). However,
14“... Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter’s judgment is not clearly wrong or manifestly erroneous.”
Ambrose v. New Orleans Police Dept. Ambulance Service, 639 So.2d at 221; Goodliffe v. Parish Anesthesia Associates, 663 So.2d at 774.
A party who alleges the malpractice of a hospital must prove its negligence by a preponderance of the evidence. La.R.S. 2794(C). A hospital must exercise “that amount of care required by a particular patient, and must protect that patient from external circumstances peculiarly within the hospital’s control.” Hunt v. Bogalusa Community Medical Center, 303 So.2d 745, 747 (La.1974); Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 659 (La.1989).
Appellant first argues that the trial judge, referring to “he” instead of “it” in finding that appellant failed to prove her burden, indicates that he was confused as to who was being sued, perhaps referring to Dr. Beilina, who was not a party.
*1265 After our review of the record, the judgment and the reasons for judgment, we do not agree with appellant that the trial judge may have been confused regarding the identity of the defendant. The reference to “he” was an inadvertent misstatement and harmless.
Appellant also asserts that the trial judge erred in not determining whether the scar was a keloid or the result of a bum because a bum would indicate negligence on the part of Doctor’s Hospital, whereas a kel-oid is a naturally occurring scar formation phenomenon. She notes that Dr. Beilina stated that the scar was a keloid, although the sear was above the actual incision point. Appellant argues that this does not fit the definition of keloid. Appellant contends that the sear resulted from a blister caused from a bum.
Appellant testified that she received morphine after surgery. She [¿remembers that someone removed the bandage, “which hurt.” Otherwise, she had no other problems. Appellant stated that the morning after she got home, she noticed the blister on her stomach area, approximately three-fourths of an inch above the pubic area and the incision. She contacted Doctor’s Hospital and was told by a nurse to put Neosporin and wet compresses on the area. She testified that there was no dressing on the area when she left Doctor’s Hospital and she denied telling Dr. Bei-lina that she removed tape that was stuck to her abdomen when she got home. On cross-examination, appellant does not remember the heating pad or the whirlpool being too hot in Doctor’s Hospital. She contended that she had some drainage in the incision and that a nurse put Neosporin and a steri-strip on the area. However, she could not remember if the steri-strip was still on when she left Doctor’s Hospital. When she visited Dr. Beilina, she stated that he told her it could have been from the tape or diabetes, but noted that she had several blood tests when she was preparing for surgery and diabetes was not indicated. On recall to the witness stand, appellant added that Dr. Beilina did not see her every day after surgery and that his associate discharged her from Doctor’s Hospital. Appellant’s husband testified, but did not add any additional information.
Dr. John McCabe, a Plastic and Reconstructive surgeon, testified that he saw appellant on April 16, 1990. The history given to him by appellant was that the blister appeared when she removed the dressing from her surgery. He stated that a blister is a reaction caused by stress to the skin. This source can be infection, pressure, burn or from any of numerous other reasons. Dr. McCabe noted that appellant had been treating the area with antibiotic ointments and moist soaps, bathing it daily. Dr. McCabe stated that an adverse tape reaction can cause blistering, but he hesitated to speculate whether that was the cause of the blister. In addition, he stated that he would not dispute Dr. Beilina’s notes. However, in his opinion, the scar did not appear to be a keloid.
|6Pr. Beilina, a Gynecologist specializing in Reproductive Medicine, testified that he visited appellant in Doctor’s Hospital post-operation and his notes reflect that the incision was dry and healing. He testified that the bandage was taken off on February 2, 1989 and appellant went home without a bandage on February 4, 1989. Neither he nor the Doctor’s Hospital staff noted any abnormality with the skin. Since appellant lived in Alexandria, Louisiana, she was told to see her local physician for follow-up or to contact Dr. Beilina if she experienced any problems. Dr. Beilina testified that appellant first notified him of the problem in August of 1989. His office notes reflect that she stated that the problem occurred after she pulled off tape adhering to the skin. She did not come in for an examination at that time. Dr. Beilina saw her in September of 1989. His notes from that visit indicate that appellant told him that she noticed the blister when she pulled from her abdomen some tape that was stuck. However, he found this interesting because appellant would not have been sent home with a bandage. Dr. Beilina also stated that even if a steri-strip was on the incision, it would not cause this type of reaction. However, other types of tape could. When he observed the scar in September, it was red, irritated and he advised her to get tested for diabetes, which can cause healing *1266 problems. He requested that she obtain a glucose tolerance test by her local physician and send him the results, but she did not comply -with this request.
Dr. Beilina saw appellant again in November of 1989, at the request of her attorney. He examined the scar again. In his opinion, the scar is a keloid, a response to a skin injury that is experienced by many people. He testified that a keloid is an excessive build-up of sear tissue due to the skin being cut, injured or even bruised. He stated that a keloid can form tangential to the incision, in any direction or lopsided.
Dr. Beilina stated that nothing they did in surgery would have caused a bum and that, if she had suffered a third degree bum, as asserted, it would have |7shown up immediately. He said that a third degree bum would have had carbon on the site. Further, appellant would have remembered it because it would be analogous to having a cigarette put-out on her abdomen and he or Doctor’s Hospital staff would have noticed it. He further testified that neither the whirlpool nor the K-pads used by appellant would have caused a bum. On the other hand, blistering from adverse tape reaction is common.
Dr. Beilina noted that when he saw appellant and her husband in November, appellant’s husband was angry because of the unsightliness of the scar. The doctor believed that this caused her to be angry. He also noted that appellant’s husband had been doing home treatments and this constant manipulation could have aggravated the injury.
Dr. John Yarborough, a Dermatologist and member of the medical review panel, testified that he treats bums and keloids. He testified that a third degree burn is an event that a patient would remember because it is painful. He stated that there is no indication in the medical records that appellant suffered a burn during or after surgery. He reviewed photographs of appellant, although he did not examine her. He thought that the scar could have been caused from a tape reaction. He stated that it is an unusual injury, but if appellant snatched tape off of the skin, that could have caused such an injury. Dr. Yar-borough testified that a keloid should touch the incision site, although it can extend two to three inches from the site. He was not able to tell whether the scar was a keloid from the photographs.
In addition to the testimony, appellant’s medical records were admitted into evidence. Contained in the records was a consent form which indicated disfiguring scarring was a potential risk of surgery.
A review of the medical records, including the progress notes and the testimony, shows that appellant had an uneventful hospitalization. Appellant produced no evidence that she suffered a bum or any other type of skin injury Isthat could account for the blister which developed into the scar on her abdomen. Therefore, we find that the trial judge did not err in not addressing whether she had a bum or keloid.
In her final error, appellant asserts that the trial judge erroneously failed to apply the doctrine of res ipsa loquitur to find Doctor’s Hospital negligent.
In Mulkey v. Tubb, 535 So.2d 1294, 1295 (La.App. 5 Cir.1988), we stated:
The rules of res ipsa loquitur apply in any negligence action where the circumstances suggest the defendant’s negligence as the most plausible explanation for the injury. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). The principle of res ipsa loquitur is a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be more the probable cause of injury in the absence of other as-plausible explanations by witnesses found credible. Boudreaux v. American Insurance Company, 262 La. 721,264 So.2d 621 (1972).
In order for res ipsa loquitur to be applicable the plaintiff must show (1) the accident is of a kind that normally does not occur in the absence of negligence, (2) the aceident was caused by an instrumentality in the actual or constructive control of the defendant, and (3) the information as to the true cause of the accident was more readily available to the defendant than to the plaintiff. Culver v. Ochsner Foundation Hosp., 474 So.2d 984 (La.App. 5 Cir. 1985), writ denied 477 So.2d 705.
*1267 Res ipsa loquitur is irrelevant where a body of direct evidence is available explaining the activity leading to the injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973). When it can be shown reasonably that the accident could have occurred as a result of one or two or more causes, the res ipsa loquitur rule cannot be invoked. Hancock v. Safeco Ins. Co., 368 So.2d 1162 (La.App. 3 Cir. 1979), writ denied 369 So.2d 1377.
In Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d on rehearing at 665, 666, the Supreme Court stated:
Although the fact that an accident has occurred does not alone raise a presumption of the defendant’s negligence, the doctrine of res ipsa loquitur (the thing speaks for itself) permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury ... (The doctrine of res ipsa loquitur involves the simple matter of a plaintiff’s using circumstantial evidence to meet the burden of proof by a preponderance of the evidence ... The doctrine merely assists the plaintiff in presenting a prima facie ease of negligence when direct evidence is not available ... The doctrine permits, but does not require, the trier of fact to infer negligence from the circumstances of the event ...
|9In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish a foundation of facts on which the doctrine may be applied ... The injury must be of the type which does not ordinarily occur in the absence of negligence ... In other words, “the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent” ... The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle ... The plaintiff does not have to eliminate all other possible causes or inferences, but must present evidence which indicates at least a probability that the injury would not have occurred without negligence ...
The facts established by plaintiff must also reasonably permit the jury to discount other possible causes and to conclude it was more likely than not that the defendant’s negligence caused the injury ... Again, the plaintiff does not have to eliminate completely all other possible causes, but should sufficiently exclude the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident ... The inference of negligence points to the defendant when the conduct of others is eliminated as a more probable cause ... The plaintiff must show not only that an accident occurred or that the accident was caused by the negligence of someone, but also that the circumstances warrant an inference of defendant’s negligence.
The plaintiff must also establish that the defendant’s negligence indicated by the evidence falls within the scope of his duty to the plaintiff ... This is often, but not necessarily, proved by a showing that the defendant was in exclusive control of the injury-causing instrumentality.
Use of the doctrine of res ipsa loquitur in a negligence case, as in any case involving circumstantial evidence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery ... When all the evidence is in, the question for the jury is whether the preponderance of the evidence is with the plaintiff ... (Citations and footnotes omitted.)
In this case, there is no evidence that the scar was caused by a burn or that it was caused by some instrumentality or action of Doctor’s Hospital. In addition, the evidence showed that the appellant and her husband continued to manipulate the site of the blister, which Dr. Beilina stated could have aggravated the injury causing the skin to develop the excess scar tissue. Thus, appellant failed to prove two of the basic premises for the application of res ipsa loquitur; that is, that the evidence shows, more probably than not, that the injury was of a kind which *1268 ordinarily does not occur in the absence of negligence and that the conduct j ipof the appellant or of a third person was sufficiently eliminated by the evidence as a more probable cause of the injury. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d at 665; Mulkey v. Tubb, 535 So.2d at 1294,1295. Consequently we find that the trial judge did not err in failing to apply the presumption of negligence under the doctrine of res ipsa loquitur.
Reviewing the case without the presumption of negligence under res ipsa loquitur, for the same reason, appellant failed to prove by a preponderance of the evidence that Doctor’s Hospital failed to exercise “that amount of care required by a particular patient.” Hunt v. Bogalusa Community Medical Center, 303 So.2d at 747. Thus, we find that the trial judge was not manifestly erroneous in finding that Doctor’s Hospital was not negligent and dismissing appellant’s case.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid for by the appellant.

AFFIRMED.